Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Miles N. Clark, Esq.
Nevada Bar No. 13848
KNEPPER & CLARK LLC
5510 S. Fort Apache Rd., Suite 300
Las Vegas, NV 89148-7700
Phone: (702) 856-7430
FAX: (702) 447-8048
Email: matthew.knepper@knepperclark.com
Email: miles.clark@knepperclark.com

George Haines, Esq.
Nevada Bar No. 9411
David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| Linda Spacil, and all similarly situated individuals, | : |
| | : Case No.: |
| | : |
| Plaintiff, | : |
| v. | : **CLASS ACTION COMPLAINT** |
| | : |
| Home Away, Inc., | : **JURY TRIAL DEMANDED** |
| | : |
| Defendant. | : |
| | : |
| | : |

1

## JURISDICTION AND VENUE

1.    This Court has federal question jurisdiction because this case arises out of violation of federal law, specifically the FTC Act, 15 U.S.C. 45 *et seq.* by defendant Home Away, Inc. ("Home Away").  28 U.S.C. § 1331; *Smith v. Community Lending, Inc.*, 773 F.Supp.2d 941, 946 (D. Nev. 2011).

2.    This Court has supplemental jurisdiction to hear all state law claims under Nevada state law pursuant to 28 U.S.C. § 1367.

3.    This Court also has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) because the amount in controversy exceeds $5 million exclusive of interest and costs, there are more than 100 putative class members, and at least some members of the proposed Class have different citizenship than Home Away.

4.    Venue is proper in the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1391(b) because Plaintiff is a resident of the County of Clark, State of Nevada and because Defendant is subject to personal jurisdiction in the County of Clark, State of Nevada as it conducts business there. Venue is also proper because, the conduct giving rise to this action occurred in Nevada. 28 U.S.C. § 1391(b)(2).

## PARTIES

5.    Plaintiff Linda Spacil ("Plaintiff") is a natural person residing in the County of Clark, State of Nevada.  Plaintiff and all putative members of the putative Class and Subclasses 1-6 ("Subclasses") are individual persons.

6.  Defendant Home Away, Inc. ("Home Away") is a Delaware corporation with its principal place of business in Austin, Texas.  It is a subsidiary of Expedia, Inc. ("Expedia").  Home Away's business is principally operating as an intermediary facilitating online vacation rentals.

7.  Unless otherwise indicated, the use of Home Away's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Home Away, as well as its affiliates.

## FACTUAL ALLEGATIONS

***Home Away Permits Numerous Consumers, Including Plaintiff, to Enter Into Fraudulent Transactions Without Providing Sufficient Warning About the Dangers of the Transactions.***

8.  Home Away conducts its rental-broker business online, where it "connects" prospective renters like Plaintiff with property owners willing to rent properties.  It derives income in the form of commissions from the rental transactions booked through its website.

9.  Because prospective renters like Plaintiff and Class members are business invitees when using Home Away's website to find rental properties, Home Away is under an obligation to conduct a reasonable investigation into potential hazards of using their website to conduct rental transactions.  This includes the possibility that rental listings are in fact posted by "scammers," i.e., individuals who post false listings on the site in the hope of luring unsuspecting consumers to book rental properties which will not be provided to the consumer in question.  Home Away is under an additional obligation to inform users like

Plaintiff and Class members of these potential hazards.

10.     Home Away knows or has reason to know that its website has been used by scammers in the past.  For example, in or about February of 2016, Home Away was sued by another user of its website for permitting another scammer to abscond with at least $74,000 from various consumers.  *See Hiam v. Homeway.com, Inc.*, No. 16-cv-10360-WGY, ECF No. 1 (D. Mass. Feb. 19, 2016).

11.     However, Home Away's website does not warn its business invitees about its past history with such scammers, nor that the risk of fraud by such individuals continues to this day.

12.     On information and belief, Home Away has developed processes to detect the presence of fraudulent postings, and remove prospectively fraudulent rental postings from its website. However, on information and belief Home Away has no processes in place to notify those invitees who have viewed or booked prospectively fraudulent rentals of the high likelihood that the "rental" opportunity in question was fraudulent, so that they could cancel the transactions or avoid contact with the criminals in question.

13.     On or about April 3, 2019, Plaintiff booked a vacation rental in Switzerland through Home Away ("Fraudulent Rental").  To book the rental, Plaintiff provided Home Away with her name, address, phone number, credit card number, email address, and likely her date of birth.  Home Away subsequently provided, at minimum, Plaintiff's name and email address to the alleged property owner ("PII").  Thereafter, the purported property "owner" used some of the information Home Away provided to it to contact Plaintiff and request that she (1) cancel her Home Away reservation so that a "discount" to the rental rate could be

4

applied, and (2) wire finds to the scammer directly from her bank.

14.     As instructed by the scammer, Plaintiff cancelled her Home Away reservation and, provided the requested funds to the alleged property owner via direct bank transfer. The scammer then absconded with Plaintiff's funds.

15.     Although not known to Plaintiff, Home Away had apparently deleted the Fraudulent Rental just after Plaintiff booked her reservation. However, Home Away did not notify Plaintiff of the likely fraudulent nature of the transaction, even though Home Away knew that Plaintiff had booked a reservation for the property on Home Away's website.

16.     Had Home Away properly notified Plaintiff that its website was frequently used by scammers, she would not have used the site at all, or taken additional efforts to verify the legitimacy of the scammer's requests for funds prior to sending them. Had Home Away promptly notified Plaintiff that the rental she had booked was fraudulent, she would have ceased all communication with the scammer and would not have transferred any funds to the scammer.

17.     When Plaintiff contacted Home Away to inform them of the situation, a customer service representative told her that it was unsurprising that the rental application was fraudulent, but was unable to resolve Plaintiff's requests for reimbursement of her payment.

18.     On or about April 5, 2019, Plaintiff filed a customer complaint with Home Away. However, Home Away's investigation into Plaintiff's complaint did not result in the return of her funds, or otherwise resolve to Plaintiff's satisfaction.

***Home Away's Conduct Violated 15 U.S.C. § 45 and NRS 603A.210,***
***which constitutes negligence per se.***

19.   Pursuant to the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, Home Away had a duty to provide fair and adequate computer systems and data security to safeguard the personal information of Plaintiff and Class members from disclosure of the information to scammers.

20.   The FTCA prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Home Away, of failing to use reasonable measures to protect personal information.  The FTC publications and orders also form part of the basis of Home Away' duty in this regard.

21.   Home Away solicited, gathered, and stored personal information, of Plaintiff and the Class members to facilitate sales transactions which affect commerce.

22.   Home Away violated the FTCA by failing to use reasonable measures to protect personal information of Plaintiff and Class members and not complying with applicable industry standards, as described herein.

23.   Home Away's misrepresentations about the nature and quality of the services it provided – i.e., that such services were all legitimate and that its website was safe to use – also constituted unfair trade practices, in violation of the FTC Act.

24.   Home Away's violations of the FTCA constitutes negligence *per se*., because Plaintiff and Class members are within the class of persons that the FTC Act was intended to protect, and the harm that occurred as a result of Home Away's facilitation of fraudulent

6

transactions is the type of harm the FTCA was intended to guard against.

25.     Additionally, according to NRS 603A.210, Home Away had a duty to implement and maintain reasonable security procedures and practices to safeguard Plaintiff and Subclass 1 members' personal information.  Plaintiff and Subclass 1 members are within the class of persons that NRS 603A.210 was intended to protect, and the harm that occurred as a result of Home Away's failure to safeguard Plaintiff's PII is the type of harm the statute was intended to guard against.

26.     Consequently, Home Away breached its duties to Plaintiff and Subclass 1 members under NRS 603A by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and the Class' personal information.

### *Home Away's Conduct Violated NRS 603A, NRS 598 and NRS 41.600.*

27.     Plaintiff's booking of a reservation through Home Away constituted the use of Home Away's business services.

28.     Home Away breached its duty under NRS 598.0915(2).  This statutory section makes it a "deceptive trade practice" for a person in the course and scope of its business to "knowingly make[] a false representation as to the . . . certification of . . . services for sale or lease." By advertising rental properties to Plaintiff and all Subclass 2 members as if the transactions were legitimate when in fact they were not, Home Away engaged in a deceptive trade practice which violated Nevada law.

29.     Thus, Home Away's conduct also violated NRS 598.0917(7) because it constituted a tender of "goods advertised for sale . . . or tendering terms of sale or lease less favorable than the

terms advertised," i.e., goods offered for sale by credit card without the corresponding promise that a consumer's PII would be kept reasonably safe from harm. In so doing, Home Away violated NRS 598.0917(7) in connection with Plaintiff and Subclass 3 members.

30.    Home Away's conduct also violated NRS 598.0923(2) in connection with Plaintiff and Subclass 4 members. This statutory section makes it a deceptive trade practice for a person in the course of its business to knowingly "fail[] to disclose a material fact in connection with the sale or lease of goods or services." By failing to disclose the fraudulent nature of the transaction, or the substantial likelihood of fraud, Home Away violated Nevada law with respect to Plaintiff and Subclass 4 members.

31.    Consequently, Home Away breached its duty under NRS 603A.210 to Plaintiff and Subclass 5 members, which requires any data collector "that maintains records which contain personal information" of Nevada residents to "implement and maintain reasonable security measures to protect those records from unauthorized access, acquisition, . . . use, modification or disclosure." Home Away did not take such reasonable security measures, as reflected by the fact it disclosed Plaintiff's and Subclass 5 members' PII to a scammer.

32.    Plaintiff and Subclass 5 members paid Home Away not only for the rental services purchased at their locations, but also for, *inter alia*, the protection of the PII they provided to Home Away. In so doing, they impliedly relied on Home Away's promise to keep their PII safe from unauthorized disclosure.

33.    Had Plaintiff and Subclass 5 members known of Home Away's inability to adequately

8

protect PII from disclosure to scammers, they would have paid substantially less for Home Away's services, or would have likely "voted with their feet" by purchasing the same services from another similar seller.

34. However, because Home Away failed to protect Plaintiff and Subclass 5 members' PII, they did not receive the entirety of the goods they paid for, and correspondingly paid more than they would have otherwise for these goods.

35. Additionally, NRS 598.0923(3) provides that a violation of any federal or Nevada law constitutes consumer fraud. Defendant's violations of NRS 603A.210, 598.0915(2), 598.0917(7), and 598.0923(2), and the FTC Act, as outlined above, also "relat[ed] to the sale . . . of goods or services," and thus violated NRS 598.0923(3).

36. Home Away's violations of NRS and 598.0923(3), 598.0917(7), and NRS 603A.210 in turn constituted "consumer fraud" for purposes of NRS 41.600(2)(e).

### *Home Away Breached the Duty of Care They Owed to Their Invitees.*

37. Home Away routinely engages in commercial transactions in which members of the public, like Plaintiff and Subclass 6 members, are invited to its business premises to purchase goods.

38. Because Plaintiff and Subclass 6 members were invitees of Home Away, it owed its customers a duty of care to inspect for and discover unknown dangers, as well as to notify Plaintiff and Subclass 6 members of the same.

39. On information and belief, Home Away breached this duty by failing to either adequately investigate or notify Plaintiff and Subclass 6 members of the dangers of scammers both

before and after they booked rentals through Home Away's website, or after it discovered that a particular transaction was fraudulent.

***Home Away Breached the Implied Contract It Had with Plaintiff and Class Members.***

40.   When Plaintiff and Subclass 7 members provided their personal information to Home Away in connection with rental bookings, they entered into implied contracts by which Home Away agreed to protect their personal information and timely notify them in the event of fraud.

41.   Home Away invited its customers, including Plaintiff and the Subclass 7 members, to make purchases at Home Away venues using payment cards in order to increase sales by making purchases more convenient.

42.   An implicit part of the offer was that Home Away would safeguard the personal information using reasonable or industry-standard means and would timely notify Plaintiff and Subclass 7 members in the event of a data breach.

43.   Based on the implicit understanding and also on Home Away's representations, Plaintiff and Subclass 7 members accepted the offers to book rental properties through Home Away's website, and provided Home Away with their personal information to facilitate these transactions.

44.   Plaintiff and Subclass 7 members would not have provided their PII to Home Away had they known that Home Away would not safeguard their personal information as promised or provide timely notice of a data breach.

45.   Plaintiff and Subclass 7 members fully performed their obligations under the implied

contracts with Home Away.

46. Home Away breached the implied contracts by failing to safeguard Plaintiff and Subclass 7 members' personal information from disclosure to scammers.

47. The losses and damages Plaintiff and Subclass 7 members sustained (as described above) were the direct and proximate result of Home Away's breaches of its implied contracts with them.

### Harms Plaintiff Suffered as a Result of Home Away's Violations.

48. As a result of Home Away's failure to notify her of the fraudulent nature of the transaction, Plaintiff has lost time in dealing with issues related to the fraudulent rental, including numerous phone conversations with Home Away and financial institutions in an attempt to determine the scope of the fraud, as well as in an attempt to have the transaction rescinded and the funds returned to her. On information and belief, these actual damages are shared with members of Plaintiff's Class and Subclasses.

49. Plaintiff has also lost the money she deposited to secure the fraudulent rental, which has not been returned to her. On information and belief, these actual damages are shared with members of Plaintiff's Class and Subclasses.

50. Plaintiff has also suffered stress and frustration as a result of Home Away's failure to notify her of the known danger of scammers. On information and belief, these actual damages are shared with members of Plaintiff's Class and Subclasses.

51. Additionally, incorporated into the price of the rental was Home Away's commission, which was premised in part on the implied understanding that Home Away would operate

its website in a manner which ensured that the website was free of fraudulent activity. By failing to enact appropriate safeguards, Plaintiff, Class, and Subclass members overpaid for the services Home Away provided, resulting in more money ultimately being transferred to scammers.

52.  Plaintiff, Class, and Subclass members also relinquished private information, including names and email addresses, to Home Away, who permitted a scammer to access it. Given the illicit nature of the scammer's business, it is likely that Plaintiff and the Class and Subclass member's personal data has also been compromised, diminishing their interest in privacy. Therefore, Plaintiff, Class, and Subclass members have also suffered imminent and impending injury arising from the substantially increased risk of future fraud, identity theft and misuse posed by their personal and financial information being placed in the hands of criminals who may have already misused such information stolen via sale of personal and financial information on the Internet black market. Moreover, there is a high likelihood that significant identity theft and fraud has not yet been discovered or reported, and that Plaintiff, Class, and Subclass members' PII will be offered for sale or actually sold in "dark web" marketplaces. This will result in ongoing harm to Plaintiff and members of the Class and Subclasses as data thieves invariably seek to utilize the PII, or seek to re-sell it. Thus, Home Away's wrongful disclosure of PII placed Plaintiff, Class, and Subclass members in an imminent, immediate, and continuing risk of harm for identity theft and identity fraud, which is ongoing.

53.    By failing to take reasonable steps to protect Plaintiff, Class, and Subclass members' PII from disclosure to scammers, and failing to conduct their business in a manner that constituted a fair trade practice, Home Away deprived these consumers of benefits conferred on them by Congress and the Nevada legislature. These statutory benefits, now lost, can never be recovered.

54.    Plaintiff, Class, and Subclass members are also entitled to an affirmative injunction requiring Home Away to modify its fraud-notification procedures to incorporate immediate notice to consumers who have booked a rental with Home Away which is found to be fraudulent.

55.    Plaintiff, Class, and Subclass members are also entitled to an affirmative injunction requiring Home Away to clearly and conspicuously notify consumers of the prospect of fraudulent transactions before they book vacation rentals through Home Away's website.

56.    Home Away's failure to notify Plaintiff, Class, and Subclass members of the risk of fraudulent activity in light of the known danger of the same was at least negligent. Further, in light of Home Away's longstanding notice that its website is routinely used by scammers to conduct fraudulent transactions, its actions were also reckless and willful. Therefore, in addition to recovery of actual damages, Plaintiff, Class, and Subclass members are entitled to an award of punitive damages for Home Away's actions.

57.    Plaintiff has been obligated to retain an attorney to prosecute this action, and is also entitled to an award of reasonable attorney's fees and costs on behalf of herself, but also in connection with the Class and Subclasses.

## **CLASS ALLEGATIONS**

58.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiff asserts her claims that Home

Away violated both federal and Nevada law as follows:

59.     Plaintiff brings this action pursuant to 15 U.S.C. § 45, on behalf of a nationwide class of

all similarly situated individuals ("Class 1"), defined as:

> All persons in the United States who booked a rental through Home Away's website
> that Home Away later removed due to the actual fact that, or substantial likelihood
> that, the booked rental was fraudulent.

60.     Plaintiff brings this action pursuant to NRS 603A.210, on behalf of a subclass of all

similarly situated individuals in Nevada ("Subclass 1"), defined as:

> All persons in the United States who provided Home Away with their PII which
> Home Away provided to a third party in connection with a rental booking which
> Home Away later removed due to the actual fact that, or substantial likelihood that,
> the booked rental was fraudulent.

61.     Plaintiff also brings this action pursuant to NRS 41.600 and NRS 598.0915(2) on behalf of

a subclass of all similarly situated individuals in Nevada ("Subclass 2"), defined as:

> All persons in Nevada for whom Home Away failed to inform a consumer who
> purchased a vacation rental that the listing in question was fraudulent prior to the
> time the consumer entered into the transaction.

62.     Plaintiff also brings this action pursuant to NRS 41.600 and NRS 598.0917(7) on behalf of

a subclass of all similarly situated individuals in Nevada ("Subclass 3"), defined as:

> All persons in Nevada for whom Home Away failed to inform a consumer who
> purchased a vacation rental that the listing in question was fraudulent prior to the
> time the consumer entered into the transaction.

63.     Plaintiff also brings this action pursuant to NRS 41.600 and NRS 598.0923(2) on behalf of

a subclass of all similarly situated individuals in Nevada ("Subclass 4"), defined as:

All persons in Nevada who booked a rental through Home Away's website that
Home Away later removed due to the actual fact that, or substantial likelihood that,
the booked rental was fraudulent.

64.     Plaintiff also brings this action pursuant to NRS 41.600 and NRS 598.0923(3) on behalf of

a subclass of all similarly situated individuals in Nevada ("Subclass 5"), defined as:

All persons in the United States who booked a rental through Home Away's website
and that Home Away later removed due to the actual fact that, or substantial
likelihood that, the booked rental was fraudulent.

65.     Plaintiff also brings this action pursuant to common law on behalf of all similarly situated

individuals in Nevada ("Subclass 6"), defined as:

All persons in Nevada for whom Home Away failed to inform of the risk of fraud
on its website, when that consumer booked a rental with Home Away which Home
Away later removed as fraudulent.

66.     Plaintiff also brings this action pursuant to Nevada common law on behalf of a subclass of

all similarly situated individuals in Nevada ("Subclass 7"), defined as:

All persons in Nevada who provided Home Away with their PII in connection with
a vacation rental booking for which Home Away, or its agent, provided to a third
party whose listing Home Away later removed due to the actual fact that, or
substantial likelihood that, the booked rental was fraudulent.

67.     Excluded from the Class and Subclasses are: (1) Home Away, Home Away's agents,

subsidiaries, parents, successors, predecessors, and any entity in which Home Away has a

controlling interest, and those entities' current and former employees, officers, and

directors; (2) the Judge to whom this case is assigned and the Judge's immediate family;

(3) any person who executes and files a timely request for exclusion from the Class and Subclasses; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

68.    At this time Plaintiff does not know the size of the Class and Subclasses because the information is exclusively in the possession of the Home Away, but Plaintiff believes that the potential number of Class and Subclass members is so numerous that joinder would be impracticable.

69.    On information and belief, Home Away's global revenue exceeds 100 million dollars annually.  Given the considerable volume of sales regularly conducted by Home Away at their Home Away stores, the Class and each Subclass likely numbers in the hundreds, if not more.  The number of Class and Subclass members can be determined through discovery, particularly investigation of Home Away's internal records.

70.    All members of the Class and Subclass have been subject to and affected by a uniform course of conduct in that all members' personal information was compromised during the course of transactions ultimately deemed fraudulent, as well as issues related to disclosure of the known risk of scammers both before and after Class and Subclass members booked reservations on Home Away's website.  These are questions of law and fact common to the proposed Class and Subclasses that predominate over any individual questions.  The questions common to all Class and/or Subclass members include, but are not limited to:

a.   Whether Home Away engaged in unfair trade practices in violation of federal or Nevada law by failing to notify consumers of the real or substantial likelihood of fraud, either before or after that consumer booked a vacation rental through Home Away's website and made their PII available to potential scammers;

b.   Whether Home Away breached an implied contract with persons who provided their PII to Home Away in connection with transactions which Home Away knew or had reason to know were fraudulent;

c.   Whether Home Away's conduct was negligent and/or willful when it did so;

d.   Whether Plaintiff and Class members suffered damages as a result of Home Away's failure to conform its conduct to the law;

e.   Whether Plaintiff and Class members are entitled to punitive damages; and

f.   Whether Plaintiff and Class members are entitled to orders requiring Home Away to clearly and conspicuously inform site users of the prospect of fraudulent transactions both when entering the site, and after Home Away determines that a specific transaction was or was likely fraudulent.

71.   Plaintiff's claims are typical of the Class and Subclasses, as Plaintiff (1) booked a vacation rental through the Home Away website without knowledge of the substantial likelihood that scammers used Home Away's website to conduct fraudulent transactions; (2) provided PII to Home Away in connection with those transactions; (3) her booked rental was subsequently removed by Home Away due to the fact it was fraudulent; but (4) Home Away never timely notified her of the fraudulent nature of the transaction.  All claims are based on the same legal and factual issues.

72.   Plaintiff will adequately represent the interests of the Class and Subclasses, and do not have an adverse interest to the class.  If individual Class or Subclass members prosecuted separate actions, it may create a risk of inconsistent or varying judgments that would

establish incompatible standards of conduct. A class action is the superior method for the quick and efficient adjudication of this controversy. Plaintiff's counsel has experience litigation consumer class actions.

73.    Further, under Fed. R. Civ. Pro. 23(a), Defendant acted on grounds generally applicable to the proposed Class and Subclasses, making appropriate final declaratory and injunctive relief with respect to the proposed Class and Subclasses as a whole.

### COUNT ONE: Negligence Per Se
### Plaintiff and the Class

74.    This Count is brought on behalf of the nationwide Class.

75.    Home Away's conduct, as alleged above, constituted multiple violations of the FTC Act and NRS 603A.210 constituted negligence *per se*.

76.    The harm Plaintiff and Subclass members suffered was the type of harm these statutes were designed to protect.

77.    As a result of each and every violation of the FTC Act and/or NRS 603A.210, Plaintiff and Class members are entitled to: actual damages, as well as an award of reasonable attorneys' fees and costs.

### COUNT TWO: VIOLATION OF NRS 41.600
### Plaintiff and Subclasses 1-5

78.    This Count is brought on behalf of the Nevada Subclasses 1-5.

79.    Home Away engaged in deceptive trade practices in violating NRS 603A.210, NRS 598.0915(2), NRS 598.0917(7), NRS 0923(2), and NRS 598.0923(3) NRS unfair and unlawful acts and practices by failing to maintain adequate procedures to avoid a data

breach, and permitting access to consumer reports by data thieves, for whom Home Away had no reasonable grounds to believe would be used for a proper purpose. Plaintiff and Subclass members relied on Home Away's implied promise of data security when providing their PII to Home Away to purchase Home Away's goods.

80. All of these violations constituted "consumer fraud" pursuant to NRS 41.600.

81. As a direct and proximate result of the foregoing, Plaintiff and Subclass 1-5 members have suffered injuries including, but not limited to actual damages, and in being denied a benefit conferred on them by the Nevada legislature.

82. As a result of these violations, Plaintiff and Subclass 1-5 members are entitled to an award of actual damages, equitable injunctive relief requiring

83. Plaintiff and Subclass 1-5 members are also entitled to an affirmative injunction requiring Home Away to modify its fraud-notification procedures to incorporate immediate notice to consumers who have booked a rental with Home Away which is found to be fraudulent.

84. Plaintiff and Subclass 1-5 members are also entitled to an affirmative injunction requiring Home Away to clearly and conspicuously notify consumers of the prospect of fraudulent transactions before they book vacation rentals through Home Away's website.

### **COUNT THREE: Negligence**
### **Plaintiff and Subclass 6**

85. This Count is brought on behalf of the Nevada Class.

86. Home Away negligently breached its duty of care to its business invitees by failing to uncover and remedy the known risks of scammers on their website.

87.    Additionally, Home Away failed to inform Plaintiff and Subclass members of this heightened risk of harm.

88.    Plaintiff and Subclass members suffered damages as a result of Home Away's breach of its duty of care, and are entitled to an award of actual and punitive damages, as well as an award of reasonable attorney's fees and costs.

**COUNT FOUR: Breach of Implied Contract**
**Plaintiff and Subclass 7**

89.    This Count is brought on behalf of the Subclass 7.

90.    Home Away breached the implied contract it entered into with Plaintiff and Subclass 7 members to keep their PII safe from disclosure to scammers, as described above.

91.    As a result of Home Away's breach, Plaintiff and Subclass 7 members are entitled to an award of actual damages and attorney's fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, respectfully requests the following relief against Home Away:

A.  For an award of actual damages against Home Away for all allegations;

B.  For an award of punitive damages against Home Away as the Court may allow for the allegations contained in Count One pursuant to Counts Two and Three;

C.  For an award of the costs of litigation and reasonable attorneys' fees for all Counts;

D.  For a preliminary and permanent injunction requiring Home Away to clearly and conspicuously notify all users of its site of the risk posed by scammers, pursuant to Count Two;

E.  For a preliminary and permanent injunction requiring Home Away to clearly, conspicuously, and immediately notify all consumers who book vacation rentals when

those rentals are either suspected to be fraudulent, or determined to be so, pursuant to Count Two; and

F.    For all other relief this Court may deem just and proper**.**

## **JURY DEMAND**

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: June 7, 2019

Respectfully Submitted,

/s/ David H. Kreiger
David H. Krieger, Esq.
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123

Matthew I. Knepper, Esq.
Miles N. Clark, Esq.
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Suite 170-109
Las Vegas, NV 89129

*Counsel for the Plaintiff and the Class*