UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

LINDA SPACIL, and all similarly situated
individuals,

Plaintiff,

v.

HOME AWAY, INC.,

Defendant.

Case No. 2:19-CV-00983-GMN-EJY

**ORDER**

Before the Court is Defendant HomeAway.com, Inc.'s ("HomeAway" or "Defendant")
Motion to Compel Arbitration (ECF No. 7). The Court has considered Defendant's Motion, Plaintiff
Linda Spacil's ("Spacil" or "Plaintiff") Response (ECF No. 17), and Defendant's Reply (ECF No.
18), and finds the following.

**BACKGROUND**

It is uncontested that HomeAway operates an online platform allowing property owners and
managers to list properties for relatively short-term rent by individuals and families traveling to the
location of the property rented.[1]   VRBO.com is one of the services offered by HomeAway.
According to Plaintiff's Complaint, as supported by the Motion to Compel, on April 3, 2019,
Plaintiff submitted a request to book a property in Switzerland using VRBO, which she cancelled
after receiving a discounted offer from the alleged property owner. Plaintiff apparently then sent
money directly to the purported owner of the Switzerland property. However, when Plaintiff became
concerned that she was the victim of a scam, she contacted HomeAway. HomeAway investigated
Plaintiff's concern but, because Plaintiff chose to cancel her booking request made through the
VRBO website, and instead chose to work directly with the supposed property owner, Defendant
did not reimburse Plaintiff for her loss.

---

[1]       At no point in Plaintiff's Response to Defendant's Motion to Compel does Plaintiff take issue with any fact
pertaining to HomeAway's business or HomeAway's representations regarding Spacil's request to book a property in
Switzerland in April 2019. ECF No. 17, generally.  Thus, the Court recounts the facts as presented by Defendant
HomeAway.

1

In support of its Motion to Compel, HomeAway offers the declaration of Lee Huberman ("Huberman"), employed by HomeAway since at least May 2, 2016, who reviewed and is familiar with HomeAway's booking processes.[2] ECF No. 7-1. Huberman attaches to his declaration exemplars of the VRBO booking request screens that are "materially similar" to the booking request screens Plaintiff "would have experienced on or about April 3, 2019." Declaration of Lee Huberman ("Huberman Dec.") ¶ 7; Exs. A through C. Huberman also explains the booking process in detailed. *Id.* ¶¶ 8-12. Huberman states that HomeAway does not own or operate the properties listed on its website and is not a party to the agreements between those offering rentals and those accepting such offers. *Id.* ¶ 5.

The booking process begins by selecting a property, identifying the dates of the proposed stay, and identifying the number of guests in the booking party. *Id.* ¶ 9. Once that information is entered by the person using the website, the user must click the "Request to Book" button to get to the "Begin your booking" page. *Id.* and Ex. A.

Toward the bottom of the "Begin your booking page" (Exhibit A) is a blue button against a grey background with white text that reads "Agree & continue." *Id.* The following pertinent language appears right above this button: "By clicking 'Agree & continue' you are agreeing to our Terms and Conditions, Privacy Policy, and to receive booking-related texts." *Id.* The letters in this sentence appears in black with the exception of the words "Terms & Conditions," and "Privacy Policy" that appear in blue text. Huberman Dec. ¶ 10. The blue text operates as hyperlinks and, when clicked, take the user to the full Terms & Conditions or Privacy Policy then in effect. *Id.* Unlike the examplars about which Plaintiff complains, there is no dispute that, in April 2019, a person using the VRBO website could not continue to the next step of the booking process without clicking on "Agree & continue." Huberman Dec. ¶ 13.

Once a user clicks on "Agree & continue," the individual is taken to the "Review rules & policies" page. Huberman Dec. ¶ 11; Exhibit B. The person must check the box stating "I have read and agree to comply with all rental policies and terms," and then must click the "Continue" button,

[2] Huberman's Declaration shows that he was first employed by HomeAway as Senior Product Manager, Traveler Checkout, and for the last 21 months as HomeAway's Director of Product Development. Huberman Dec. ¶ 2.

which is blue with white writing.  Huberman Dec. 11.  If a user does not check the box indicating he/she has read and agrees to comply with the rental policies and terms, a red circle containing an exclamation point appears next to the following (also in red):  "You must review and agree to all Rules and Policies to continue."  *Id*.  Defendant points out that at the bottom of this page the words "Terms and Conditions" and "Privacy Policy" appear in blue typeface and are hyperlinks.  *Id*.  These words are relatively small and are easy to miss if a user does not scroll down to the bottom of the page.  Huberman Dec. Ex. B.

After the user checks the box, and clicks the "Continue" button, the user is taken to the next page, which states at the top: " Enter payment information."  Huberman Dec. ¶ 12 and Ex. C.  The user then enters the payment information requested and must click the "Submit Request" button to complete the booking request process.  Huberman Dec. ¶ 12.[3]  Huberman is unequivocal when he states that no one seeking to request a booking through VRBO in April 2019 could have done so without going through each of the steps described above.  *Id*. ¶ 13.  Importantly, neither Plaintiff's brief in opposition to the Motion to Compel nor her declaration say anything about the booking request process in which Plaintiff engaged.

Since, November 14, 2017, the "Terms and Conditions" to which each person seeking to book a property through VRBO must agree are attached to Huberman's Declaration as Exhibit D (*see id*. at 1 for effective date at top).  Paragraph 19 on the bottom of page 15 of Exhibit D is titled "Disputes; Arbitration."  The second paragraph on page 16 of Exhibit D begins with the bolded words "**Any and all Claims will be resolved by binding arbitration rather than in court** . . .."  This sentence goes on to except small claims from arbitration "if they qualify."

The very next sentences state:

This includes any Claims you assert against us, our subsidiaries, users or any companies offering products or services through us (which are beneficiaries of the arbitration agreement).  This also includes any Claims that arose before you accepted the Terms, regardless of whether prior versions of the Terms required arbitration.

---

[3]     Once again, the words "Terms and Conditions" and "Privacy Policy" appear as blue typeface hyperlinks at the very bottom of this page.  *Id*.

*Id*. at 16.  The term "Claims" is defined at the top of page 16 as "any disputes or claims relating in any way to the Site, any dealings with out customer experience agents, any services or products provided, any representation made by us, or our Privacy Policy . . .."  *Id*.

The "Disputes; Arbitration" section of the Terms and Conditions is not subject to amendment, in whole or part, by HomeAway.  *Id*.  Instead, "[t]he version of this 'Dispute; Arbitration' section in effect on the date … [the user] last accepted the Terms controls."  *Id*.  Arbitration is to be performed by the American Arbitration Association ("AAA") or the Judicial Arbitration Mediation Services, and HomeAway will reimburse an individual for filing fees and arbitration fees paid to AAA if the claim asserted seeks less than $10,000.  *Id*.  Arbitration will take place where the individual-user lives unless another location is mutually agreed upon.  *Id*.  The AAA Arbitration Consumer Rules, together with the AAA general rules, apply to any arbitration under the dispute-arbitration provision.  *Id*.

Defendant seeks to enforce the arbitration agreement through its Motion to Compel. Defendant argues that Plaintiff completed a request to book on VRBO that necessarily required her to agree to the Terms and Conditions, which includes the arbitration agreement.  Plaintiff does not contest these facts.  Defendant therefore contends that because Plaintiff has offered nothing that could create a material issue of fact related to the formation of a contractual agreement to arbitrate her claims, Defendant has carried its burden of proof, and Defendant is entitled to enforce the contract and compel arbitration.

Despite Plaintiff's failure to contest any facts presented by Defendant, Plaintiff contends that the Motion to Compel must be denied because HomeAway provides exemplars of screens "substantially similar" to the ones Plaintiff would have seen in April 2019, and HomeAway fails to identify what differences exist between what the Court received and what Plaintiff actually saw. Plaintiff contends that, for this reason, the Court cannot "ascertain whether … [Plaintiff] agreed to be bound by the arbitration provision."  Plaintiff also states that HomeAway fails to produce documents showing Plaintiff's name or electronic signature.  Finally, Plaintiff argues the arbitration agreement is substantively and procedurally unconscionable.

Plaintiff does not dispute that the Court has the authority to determine whether this matter is properly stayed or dismissed pursuant to an arbitration provision that appears in its Terms and Conditions to which users in April 2019 must have agreed in order to complete a booking request on a HomeAway website. And, to this end, Plaintiff does not dispute that she used VRBO and completed a booking request for a property in Switzerland on April 3, 2019. Plaintiff also does not respond to Defendant's contention that Plaintiff cancelled the VRBO booking and paid the purported owner/manager of the property directly rather than going through VRBO to do so. Thus, having used VRBO to select and submit a booking request, Plaintiff does not dispute that she went through each of the steps Defendant explains in detail in its Motion. Plaintiff does not offer any facts or evidence of any kind to call into question the proposition that HomeAway's Terms and Conditions have not changed since November 14, 2017, the effective date on Exhibit D. ECF No. 17-1, Ex. D. p. 1. Although Plaintiff repeatedly refers to Defendant's supposed inability to produce documents Plaintiff purportedly "signed," Defendant does not contend Plaintiff signed any document. Rather, Defendant asserts that in order to submit a booking request through VRBO, Plaintiff would have necessarily gone through each step described by Huberman, including the step requiring her to click on the tab stating "Continue and agree," which Plaintiff does not dispute.

## DISCUSSION

The Federal Arbitration Act ("FAA") states, in pertinent part, "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Sections 3 and 4 of the FAA, respectively, grant U.S. District Courts the power to stay litigation in cases referred to arbitration and the power to compel parties to engage in arbitration. Section 4 of the FAA states: "The court shall hear the parties, and *upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue*, the court shall make an order directing the parties to

proceed to arbitration in accordance with the terms of the agreement." (Emphasis added.); *see also Dillon v. BMO Harris Bank, N.A.*, 173 F.Supp.3d 258, 269 (M.D.N.C. 2016).

When deciding whether to compel arbitration, courts generally determine two "gateway" issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). However, these gateway issues can be expressly delegated to the arbitrator where "the parties clearly and unmistakably provide otherwise." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986); *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 69 n.1 (2010) (when an arbitration agreement contains a provision or clause delegating threshold issues of arbitrability to the arbitrator, the provision will be upheld so long as the provision represents a "clear and unmistakable" intent to allow issues of arbitrability to be decided by the arbitrator rather than by a court). Federal law governs the arbitrability questions in this case by default because the agreement is covered by the FAA, and the parties have not clearly and unmistakably designated that nonfederal arbitrability law applies. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626 (1985).

While it is true that in the absence of trustworthy evidence the Court is free to reject Defendant's proffer that Plaintiff was presented with and agreed to the arbitration provision at issue when she clicked through the VRBO website and submitted a booking request, here, Plaintiff provides no evidence upon which this Court can or should rely to reject Defendant's evidentiary proffer. *See Dillon*, 173 F.Supp.3d at 269. "[A] party opposing arbitration may not satisfy this burden through 'general denials of fact on which the right to arbitration depends'; in other words, if the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Worthington v. JetSmarter, Inc.*, Case No. 18 CV 12113, 2019 WL 4933635, at *3 (S.D.N.Y. Oct. 7, 2019) (citations omitted). As discussed in detail below, the Huberman Declaration provided by Defendant is thorough, trustworthy, and uncontested. In contrast, Plaintiff fails to submit any evidence supporting a disputed issue of fact regarding whether there was an agreement to arbitrate.

**A.     The Parties Agreed to Arbitrate**.

As the party seeking to enforce an agreement to arbitrate, HomeAway has the burden of proving the existence of a valid, enforceable arbitration agreement.  *Wilson v. Huuuge, Inc.*, --- F. 3d ---, Case No. 18-36017, 2019 WL 6974430, at *3 (9th Cir. December 20, 2019) (citation omitted). There are two primary contract formation processes that occur through internet site use.  These two contract formations are known as "clickwrap" or "browsewrap" agreements.  *Nguyen v. Barnes & Nobel Inc.*, 763 F.3d, 1171, 1175-76 (9th Cir. 2014); *Huuuge*, 2019 WL 6974430, at *4.

> Clickwrap agreements require users to affirmatively assent to the terms of use before they can access the website and its services.  Browsewrap agreements do not require the user to take any affirmative action to assent to the website terms.

*Huuuge*, 2019 WL 6974430, at *4 (*citing Nguyen*, 763 F.3d at 1175-76).  As explained in *American Speciality Lab LLC v. GenTech Scientific Inc.*, Case No. 2:17-cv-01458, 2017 WL 5505038, at *2 (D. Nev. November 16, 2017), "[t]he defining feature of browsewrap agreements is that the user can continue to use a website, or its services, without visiting the page hosting the browsewrap agreement or even knowing that such a webpage exists."  (Citations omitted.)  A browsewrap agreement is essentially one in which a user gives his/her assent to the terms just through use of the website. *Nguyen*, 763 F.3d at 1176 (citation omitted).  In contrast, clickwrap agreements, which require the user to consent to terms and conditions by clicking a box on their computer screen before proceeding, are commonly upheld by the federal courts.  *Handcock v. American Tel. and Tel Co., Inc.*, 701 F.3d 1248, 1255-56 (10th Cir. 2012) (citations omitted and cases collected therein).

Huberman's Declaration details the mandatory process through which an individual, in April 2019, had to go in order to submit a booking request using VRBO.com.  *Id.* ¶¶ 8-12.  This process clearly aligns with processes courts have upheld as "clickwrap" agreement.  While Defendant provides exemplars of web pages Plaintiff would have seen as she engaged in the booking request process, Defendant is unequivocal, and Plaintiff does not dispute, that "[i]n April 2019, neither Plaintiff nor any other Traveler could have completed the booking-request process for any property using VRBO.com without completing all of the steps" discussed by Huberman.  *Id.* ¶ 13.  One of those steps required Plaintiff to click the "Agree & continue" button above which it states, that by doing so Plaintiff was "agreeing" to the "Terms and Conditions" applicable to use of the VRBO

website. *Id.* ¶ 10. "Terms and Conditions" is a hyperlink that, if clicked, would take Plaintiff to the document containing the arbitration agreement. As stated in *JetSmarter*, Plaintiff's click on the "Agree and continue" button on the first page of the booking request process "suffice[d] to establish that Plaintiff[] assented to the arbitration provision" that is part of HomeAway's terms. *JetSmarter,* 2019 WL 4933635, at 5, (citing *Meyer* v. *Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017) ("[c]ourts around the country have recognized that an electronic click can suffice to signify the acceptance of a contract").

Unlike the facts in *Carlos v. Patenaude & Felix A.P.C.*, 736 Fed. Appx. 656 (9th Cir. 2018), in which the parties submitted conflicting evidence regarding whether the plaintiff electronically signed an online application in accordance with the requirements of Virginia law (including plaintiff's denial of having done so), Spacil does not deny (i) her use of the VRBO website, (ii) that she could only have submitted her request to book a property after clicking the "Agree & continue" button or (iii) that the "Terms and Conditions" to which she clearly had access included an arbitration provision. In sum, Plaintiff's declaration counters none of Defendant's factual allegations and addresses only the amount of her claim. ECF No. 17-1.

Having offered no contrary evidence to call into question that Plaintiff agreed to HomeAway's "Terms and Conditions," which have not changed since November 14, 2017, and provided no evidence that would cast doubt on the declaration and exemplars provided by HomeAway, Plaintiff fails to provide anything creating a dispute of fact regarding her knowledge and understanding of HomeAway's terms, which included arbitration.[4] *JetSmarter,* 2019 WL 4933635, at *3. The Court is therefore satisfied that the parties entered into an arbitration agreement that, if not procedurally and substantive unconscionable, is enforceable.

## B. The Agreement Is Not Unconscionable.

### 1. The Court Properly Decides Whether the Agreement is Unconscionable.

In 2019, the U.S. Supreme Court decided *Henry Schein, Inc. v. Archer and White Sales, Inc.*, --- U.S. ---, 139 S.Ct. 524 (2019). In *Schein*, the parties' arbitration agreement included that "the

---

[4]    Attorney argument is not evidence. *Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589, 593 n. 4 (9th Cir. 2002).

rules of the American Arbitration Association" would apply to their binding agreement.  *Id*. at 528.

The *Schein* Court confirmed that "arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms . . . [, and] when parties agree to have an arbitrator decide not only the merits of a particular dispute but also gateway questions of arbitrability" the arbitrator properly decides such issues.  *Id*. at 529 (citation and internal quote marks omitted).

However, the decision in *Schein* also states:

> This Court has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence. . . . To be sure, before referring a dispute to an arbitrator, *the court determines whether a valid arbitration agreement exists.  See* 9 U.S.C. § 2.  But, if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue."

*Id*. at 530 (emphasis added).

Two courts reviewing *Schein* have been clear that the decision does not impact this Court's authority to determine whether "the arbitration agreement is unconscionable under state contract law principles."  *Brice v. 7HBF No. 2, Ltd.*, No. 19-cv-01481, 2019 WL 5684529, at *3 (N.D. Cal. November 1, 2019); *Gingras v. Think Fin., Inc.*, 922 F.3d 112, 126 (2d Cir. 2019).  In *Brice*, the court considered whether a delegations clause appearing in a loan agreement "giving the arbitrator the right to determine the scope and enforceability of the [a]rbitration [a]greement" at issue, required the Court to "reverse its course" and refer to the arbitrator the issue of whether the agreement was enforceable. *Id*. at **3-4.  Citing to *Gingras*, the court in *Brice* found that the decision in *Schein* did not require this result.  "*Schein* dealt with an exception to the threshold arbitrability question—the so called 'wholly groundless' exception—not a challenge to the validity of an arbitration clause itself. . . . As such, *Schein* has no bearing on this case." (citation omitted).  *Id*. at 4.  Likewise, the holding in *Schein* has no bearing on whether this Court is empowered to consider the validity of the arbitration agreement at issue here based on Plaintiff's unconscionability argument.[5]  In fact, when an agreement to arbitrate is challenged based on unconscionability the district court clearly has the authority to decide the validity of the agreement.  9 U.S.C. §§ 2 and 4 (arbitration agreements

---

[5] The parties in this case do not dispute the enforceability of the delegation clause – only its scope.

challenged "upon such grounds as exist at law or in equity for the revocation of any contract" properly decided by the district court).

### C. The Arbitration Agreement is not Unconscionable.

In this case the Court applies Nevada law "principles that govern contract formation" to determine the validity of the arbitration agreement at issue. *In re Zappos.com, Inc.*, 893 F.Supp.2d 1058, 1062 (D. Nev. 2012). (citation omitted). To invalidate a contract based on unconscionability, "Nevada law requires both procedural *and* substantive unconscionability . . .." *U.S. Home Corporation v. Michael Ballesteros Trust*, 415 P.3d 32, 41 (Nev. 2018) (citation omitted) (emphasis added); *CVSM, LLC v. Doe Dancer V et al.*, 435 P.3d 659, 2019 WL 978679, at *1 (Nev. 2019). Here, the necessary offer, acceptance, and consideration exist. That is, Plaintiff was offered the opportunity to use and benefit from using the VRBO website to request a booking. It is uncontested that Plaintiff accepted this offer and submitted a booking request for a property in Switzerland. At that juncture, a contract was formed. However, if the contract is unconscionable, it may not be enforceable.

"[A] contract term is procedurally unconscionable if a party does not have the opportunity to agree to the contract term either because (1) the contract is an adhesion contract, or because (2) the terms are not readily ascertainable upon a review of the contract." *CVSM*, 2019 WL 978679, at *2 (citations omitted). The Nevada Supreme Court further explains that "[t]he distinctive feature of an adhesion contract is that the weaker party has no choice as to its terms. It is a standardized contract form offered to consumers ... on a take it or leave it basis, without affording the consumer a realistic opportunity to bargain." *Del Webb Communities, Inc. v. Goldberg*, No. CV-S-05-1185, 2006 WL 8441584, at *5 (D. Nev. January 10, 2006) (citations and internal quote marks omitted). Here, there is no doubt that the contract at issue in this case was one in which Plaintiff had no negotiating power. It was a take it or leave it contract. Thus, the test for procedural unconscionability is met.

With respect to substantive unconscionability, this evaluation "concerns the one-sidedness of the contract terms. The focus is on whether there are terms that are oppressive. The degree of procedural or substantive unconscionability required to invalidate an agreement is analyzed on a sliding scale; the stronger a showing of either procedural or substantive unconscionability, the less

evidence is required for the other." *Thi of Nevada at Henderson Convalescent, LLC v. Spierer*, Case No. No. 59021, 2013 WL 5409269, at * 1 (Nev. Sept. 20, 2013) (citations omitted). Plaintiff argues that the arbitration agreement is substantively unconscionable and should be invalidated because it imposes "excessive and unfair costs" and because it "applies to virtually all claims" associated with the use of the HomeAway website even through that website was allegedly "rife with fraudulent actors" about which Plaintiff did not know and was not told by HomeAway. ECF No. 16 at 6. Plaintiff also argues that the AAA rules "restrict the scope of discovery" effectively cutting "off her ability to prosecute" her claim. *Id.* at 17:6-7.

The Court rejects Plaintiff's argument that requiring Plaintiff to arbitrate all claims is substantively unconscionable as many courts have done before. *Starace v. Lexington Law Firm*, 1:18-cv-01596, 2019 WL 2642555, at *8 (E.D. Cal. June 27, 2009) (multiple courts have found arbitration agreements requiring arbitration of all disputes enforceable) *citing AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011); *Augustine v. TLC Resorts Vacation Club, LLC*, Case No. 3:18-cv-01120, 2018 WL 3913923, at *5 (S.D. Cal. August 16, 2018). The Court also rejects Plaintiff's argument regarding the restrictions on the scope of discovery. As explained in *U.S. Home Corporation*, "[n]early all arbitration agreements forgo some procedural protections, such as the right to a trial by jury or court-monitored discovery." 415 P.3d at 191; *see also Campos v. JPMorgan Chase Bank, NA*, Case No. 18-cv-06169, 2019 WL 827634, at **10-11 (N.D. Cal. February 21, 2019) (in which the Northern District of California collected numerous cases finding arbitration agreements conscionable where discovery was more limited than that which is imposed by the AAA rules). With respect to Plaintiff's allegation that HomeAway's website is "rife with fraudulent" actors, Plaintiff offers no evidence to support this allegation. Counsel's argument is not evidence. *Barcamerica*, 289 F.3d at 593 n. 4.

Finally, the Court is left with Plaintiff's argument regarding the alleged excessive and unfair costs arbitration imposes on Plaintiff. Plaintiff argues that Defendant will assume arbitration fees and costs if a claim is under $10,000, but that the arbitration agreement is silent with respect to claims in greater amounts. ECF No. 17 at 5. The arbitration agreement at issue actually says the following:

> Arbitrations will be conducted by the American Arbitration Association (AAA) under its rules, include the AAA Arbitration Consumer Rules (together, the "AAA Rules"). Payment of all filing, administration and arbitrator fees will be governed by the AAA [R]ules, except as provided in this section. If your Claim seeks less than $10,000, we will reimburse you for filing fees you pay to the AAA and will pay arbitrator fees.

ECF No. 17-1, Ex. D at 16. Thus, the arbitration agreement guarantees reimbursement of filing, administrative, and arbitrator fees if an individual's claim is under $10,000. If the amount sought is $10,000 or more, the AAA Rules apply. Here, Plaintiff's claim is over $10,000. Thus, we look to AAA rules to find the outcome of this issue.

Thus, Under its Consumer Rules, AAA states:

R-44. Scope of Award

(a) The arbitrator may grant any remedy, relief, or outcome that the parties could have received in court, including awards of attorney's fees and costs, in accordance with the law(s) that applies to the case.

(b) In addition to a final award, the arbitrator may make other decisions, including interim, interlocutory, or partial rulings, orders, and awards. In any interim, interlocutory, or partial award, the arbitrator may assess and divide up the fees, expenses, and compensation related to such award as the arbitrator decides is appropriate, subject to the provisions and limitations contained in the Costs of Arbitration section.

(c) The arbitrator may also allocate compensation, expenses as defined in sections (v) and (vii) of the Costs of Arbitration section, and administrative fees (which include Filing and Hearing Fees) to any party upon the arbitrator's determination that the party's claim or counterclaim was filed for purposes of harassment or is patently frivolous.

(d) In the final award, the arbitrator shall assess the fees, expenses, and compensation provided in Sections R-4, R-5, and R-7 in favor of any party, subject to the provisions and limitations contained in the Costs of Arbitration section.

Under the "Cost of Arbitration" section of the Consumer Rules it states that a Consumer's filing fee is limited to $200 (as Defendant points out, half of the filing fee to proceed in federal court). The Consumer Rules go on to describe the fees for the arbitrator, and states: "The business shall pay the arbitrator's compensation unless the consumer, post-dispute, voluntarily elects to pay a portion of the arbitrator's compensation." ECF No. 17-1, Ex. E at 33. The Rules makes clear that "[a]rbitrator compensation, expenses as defined in Sections (v) and (vii) . . ., and administrative fees (which include Filing and Hearing Fees) are not subject to reallocation by the arbitrator(s) except as may be required by applicable law of upon the arbitrator's determination that a claim or counterclaim was

filed for purpose of harassment or is patently frivolous." *Id.* These Rules undermine Plaintiff's substantive argument regarding burdensome fees and costs rendering them meritless.

In sum, Plaintiff fails to demonstrate that the arbitration agreement at issue in this case is substantive unconscionable. Therefore, Plaintiff's argument that the agreement is invalid under Nevada law fails.

### **ORDER**

Based on the foregoing, IT IS HEREBY ORDERED that Defendant's Motion to Compel Arbitration (ECF No. 7) is GRANTED.

IT IS FURTHER ORDERED that these proceedings are stayed pending the outcome of arbitration.

IT IS FURTHER ORDERED that the parties shall file a status report on April 8, 2020 notifying the Court of the status of arbitration in this action and shall file further reports every 90 days as necessary until the conclusion of arbitration.

DATED: January 13, 2020

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE